[Cite as *State v. Hawkins*, 2018-Ohio-4649.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY**

**STATE OF OHIO,**

     **PLAINTIFF-APPELLEE,**           **CASE NO. 1-18-08**

     **v.**

**QUINTEZ E. HAWKINS,**           **O P I N I O N**

     **DEFENDANT-APPELLANT.**

**Appeal from Allen County Common Pleas Court
Trial Court No. CR2017 0189**

**Judgment Affirmed**

**Date of Decision: November 19, 2018**

**APPEARANCES:**

     *Carly M. Edelstein* **for Appellant**

     *Jana E. Emerick* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Quintez E. Hawkins ("Hawkins"), appeals the February 1, 2018 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from an April 26, 2017 armed robbery of a Walgreens Pharmacy in Lima, Ohio. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 204-209). Hawkins, along with at least two accomplices, allegedly planned the robbery so that the group could acquire oxycodone pills. (*Id.* at 204, 206). On the night of the robbery, Hawkins entered the pharmacy and "cased" it. (*Id.* at 208). Hawkins then returned outside to consult with his accomplices and informed them that the robbery was "good to go." (*Id.*). One of Hawkins's accomplices then entered the pharmacy and executed the robbery, after which the group fled. (*Id.* at 204-205). However, law enforcement officers apprehended the group a short time later after they were involved in a vehicular accident in Shelby County, Ohio. (*Id.* at 205-206).

{¶3} On June 15, 2017, the Allen County Grand Jury indicted Hawkins on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a first-degree felony. (Doc. No. 1). The indictment contained a firearm specification under R.C. 2941.145(A). (*Id.*). On June 29, 2017, Hawkins appeared for arraignment and pleaded not guilty. (Doc. No. 13).

{¶4} The case proceeded to a jury trial on December 18-20, 2017. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 1); (Dec. 18-20, 2017 Tr., Vol. II, at 321); (Dec. 18-20, 2017 Tr., Vol. III, at 600). (*See also* Doc. No. 90). On December 20, 2017, the jury found Hawkins guilty as to the count and specification in the indictment. (Doc. Nos. 85, 86). The trial court filed its judgment entry of conviction on December 21, 2017. (Doc. No. 90).

{¶5} On January 31, 2018, the trial court sentenced Hawkins to seven years in prison for the aggravated robbery and three years in prison on the firearm specification. (Doc. No. 99). The trial court ordered that those terms be served consecutively for an aggregate term of ten years in prison. (*Id.*). The trial court also granted Hawkins credit for 218 days served. (*Id.*). The trial court filed its judgment entry of sentence on February 1, 2018. (*Id.*).

{¶6} On February 20, 2018, Hawkins filed a notice of appeal. (Doc. No. 102). He raises two assignments of error.

### Assignment of Error No. I

**The trial court's decision to excuse a black juror after a *Batson* challenge is clearly erroneous when it fails to conduct the necessary *Batson* analysis and instead relies on impermissible factors without examining all of the relevant evidence. Fifth and Fourteenth Amendments, United States Constitution; Article I, Section 2, Ohio Constitution; *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). (Trial Tr. vol. 1, p. 146-154).**

{¶7} In his first assignment of error, Hawkins, who is black, argues that the trial court erred by overruling his objection to the State's use of a peremptory challenge to excuse B.E., a black potential juror, which objection Hawkins entered under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). In particular, Hawkins argues that the trial court relied on impermissible factors and that it failed to consider all relevant evidence when determining whether the State's stated race-neutral reasons for excusing B.E. were merely pretexts for racial discrimination. In addition, Hawkins argues that he also raised a *Batson* objection to the State's use of a peremptory challenge to dismiss a different black prospective juror, T.M., and that the trial court erred by failing to require the State to offer race-neutral reasons for excusing T.M.

{¶8} "'In *Batson v. Kentucky*, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race."'" *State v. Pope*, 3d Dist. Marion No. 9-06-61, 2007-Ohio-5485, ¶ 7, quoting *State v. Douglas*, 3d Dist. Marion No. 9-05-24, 2005-Ohio-6304, ¶ 28, quoting *Batson* at 89. "The Court stated that a defendant can demonstrate a violation of his equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution by showing that the State's use of peremptory challenges at the defendant's trial was used to intentionally exclude members of the

defendant's race." *State v. Evans*, 3d Dist. Allen No. 1-10-22, 2010-Ohio-4813, ¶ 6, citing *Batson* at 96.

{¶9} "'"A court adjudicates a *Batson* claim in three steps."'" *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 64, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106, quoting *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001). "'First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination.'" *Id.*, quoting *Bryan* at ¶ 106, citing *Batson* at 96-98. At the first step of the *Batson* inquiry, the defendant is not required to demonstrate that "the challenge was more likely than not the product of purposeful discrimination." *Johnson v. California*, 545 U.S. 162, 170-173, 125 S.Ct. 2410 (2005). "Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.* at 170.

{¶10} "'Second, if the trial court finds [a prima facie case of discrimination], the proponent of the challenge must provide a racially neutral explanation for the challenge.'" *Frazier* at ¶ 64, quoting *Bryan* at ¶ 106, citing *Batson*, 476 U.S. at 96-98. At the second step of the inquiry, "'the issue is the facial validity of the prosecutor's explanation.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 51, quoting *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859 (1991). While "it is not enough to simply deny a discriminatory motive or assert

good faith," the "'explanation need not rise to the level justifying exercise of a challenge for cause.'" *Id.*, quoting *Batson* at 97 and citing *Batson* at 98 and *State v. White*, 85 Ohio St.3d 433, 437 (1999). "Accordingly, "'[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"" *Id.*, quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769 (1995), quoting *Hernandez* at 360.

{¶11} Finally, in step three, "the trial court must decide, based on all the circumstances, whether the opponent has proved purposeful racial discrimination." *Frazier* at ¶ 64, citing *Batson* at 98 and *Purkett* at 767. "In step three, the trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *Id.* at ¶ 65. "'[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.'" *Id.*, quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-252, 125 S.Ct. 2317 (2005) ("*Miller-El II*"). "However, * * * trial court[s] [are] not compelled to make detailed factual findings to comply with *Batson*." *Id.* at ¶ 98, citing *Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029 (2003) ("*Miller-El I*") (in ruling on a *Batson* challenge, "a state court need not make detailed findings addressing all the evidence before it"). "If the trial court determines that the proffered reason is merely

pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded." *Id.* at ¶ 65, citing *Miller-El II* at 252.

{¶12} "When reviewing an argument that the trial court should not have accepted the grounds for the peremptory challenge, '[t]he finding of the trial court, because it turns largely on the evaluation of credibility, is entitled to deference on appeal and will not be reversed unless clearly erroneous.'" *State v. Jones*, 2d Dist. Montgomery No. 26819, 2016-Ohio-5728, ¶ 8, quoting *State v. Herring*, 94 Ohio St.3d 246, 257 (2002). *See Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 64 ("A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous."), citing *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992), following *Hernandez*, 500 U.S. at 368. "Under the clearly erroneous standard of review, a reviewing court can only reverse if it is 'left with the definite and firm conviction that a mistake has been committed.'" *State v. Williams*, 8th Dist. Cuyahoga No. 100488, 2014-Ohio-3138, ¶ 8, quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985), citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525 (1948). *See Snyder v. Louisiana*, 552 U.S. 472, 477-479, 128 S.Ct. 1203 (2008) (noting that appellate courts employ a "highly deferential standard of review" when evaluating trial courts' resolutions of *Batson* challenges).

**{¶13}** During voir dire in Hawkins's trial, the State exercised three of its four peremptory challenges. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 103, 124, 142, 177). First, the State dismissed T.M., a 54-year-old black female. (*See id.* at 103, 145-147). (*See also* Juror No. 195 Questionnaire). Next, the State used its second peremptory challenge to dismiss M.M., a 74-year-old white male. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 124, 147, 151-153). (*See also* Juror No. 1002 Questionnaire). Finally, the State used its third peremptory challenge to dismiss B.E., a 65-year-old black female. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 142, 145-148). (*See also* Juror No. 109 Questionnaire). Once the State used its third peremptory challenge to excuse B.E., Hawkins's trial counsel challenged the strike under the United States Supreme Court's decision in *Batson*. Hawkins's trial counsel stated:

I * * * would note for the record that the other remaining jurors, except for [one remaining black male juror, L.S.], appear to be Caucasian Americans.

So, at this point I suggest that a pattern of strikes based upon race, at least a prima facie showing, has been shown as we've had now two out of the four strikes by the State of Ohio for African Americans on the jury. And so I would raise a challenge to the strike, based upon *Batson v. Kentucky* * * *.

> The Court's aware of * * * the standard, but I think that we have at least reached I think the first prong of [the] *Batson* test that there's a pattern. A pattern shown is based upon race by the fact that they are both African American that were used in preliminary [sic] challenges * * * not for cause. That at no time did the State move to have either of those two jurors removed for cause for any reason that was on the record and did not move to do that, so I think we've satisfied a pattern based upon race.

(Dec. 18-20, 2017 Tr., Vol. I, at 146). In response, the trial court "acknowledge[d] that two of the three peremptory challenges appeared to [have] be[en] exercised against African Americans." (*Id.* at 147). As a result, the trial court concluded that there "has been a prima facie case demonstrated." (*Id.*).

{¶14} The State then proceeded to give its race-neutral reasons for exercising its third peremptory challenge against B.E.:

> [The State]:  * * * I just think it's important to reflect for the record that the second peremptory involved a * * *
>
> [Trial Court]:  Male white man.
>
> [The State]:  Yes * * * who by all appearances was a Caucasian male of * * * 62 years of age.[1]

---

[1] The potential juror in question, M.M., was actually 74 years old. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 151-153). (*See also* Juror No. 1002 Questionnaire).

-9-

And I'm raising that because in terms of the State's race neutral reasons or reasons for exercising the peremptory against [B.E.] that has been challenged, I would note that on the juror questionnaire it reflected that she is 65 years of age, for the similar reason that I was interested in the peremptory against [M.M.], who was our second peremptory at 62.

* * * [T]he State's theory in this case is that the evidence will be such, especially some of the computerized and technical evidence relating to text messaging, to phone extractions of data that were done would be better received by a slightly younger * * *

[Trial Court]:    Audience?

[The State]:    [A]udience or jury.

* * *

[The State]:    [A]lso, more importantly in the States [sic] decision to exercise that peremptory against [B.E.], * * * she indicated when asked about her initial reaction to the

summons to come to court to serve as a potential juror that * * * she was one that used nervous or scared in describing that. And that trepidation or hesitation is not something that the State is necessarily fond of in a potential juror.

And then finally, and the biggest reason that the State did not care for [B.E.] as a juror * * *, is that she indicated that she has been a foster parent to numerous children and we believe that that might display an empathy towards younger, wayward youth, perhaps a false sympathy for the young defendant in this case that the State of Ohio did not feel was appropriate.

(*Id.* at 147-149).

{¶15} Thereafter, the trial court ruled on whether to accept the State's proffered race-neutral reasons for using its third peremptory challenge to excuse B.E.:

The Court's understanding of the law is that the burden of persuasion with respect to the determination or neutrality lies with the movant.

The Court in this case has heard a minimum of three, but more likely in fair consideration, * * * four race neutral reasons as to why the excuse of the juror by virtue of the peremptory challenge should be allowed. So, the Court will go ahead and allow the challenge in this situation of [B.E.] And the Court would indicate that the age of this potential juror is such that the computer literacy is not as—what do I want to say—astute as that of younger individuals.

Secondly, * * * similarly her age and particularly in comparing that situation to [M.M.] * * *

* * *

So, I am also impressed with the circumstances associated with the nature she does of being a * * * foster parent for younger children who appear to be disadvantaged. And I think that there were obviously race neutral reasons for the decision by the prosecution to excuse her. She will be deemed excused.

(*Id.* at 150-151).

{¶16} Hawkins does not argue either that the trial court erred by finding that he established a prima facie case of discrimination or that the State failed to offer race-neutral justifications for exercising its third peremptory challenge against B.E. Rather, Hawkins's argument turns solely on whether the trial court properly

-12-

conducted the third step of the *Batson* inquiry. As a result, we limit our analysis to that issue alone. *See Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, at ¶ 62.

{¶17} In determining whether the State's race-neutral reasons for using a peremptory challenge to strike a potential juror from the venire are merely pretextual, the United States Supreme Court has identified several factors courts should consider:

> (1) the bare statistics; (2) the similarity of answers to voir dire questions by African-American jurors who were peremptorily challenged and answers by non-African-American prospective jurors who were allowed to serve; (3) broader patterns of practice, including jury shuffling;[2] (4) disparate questioning of African-American and non African-American jurors; and (5) evidence that the prosecutor's office has historically discriminated against African-Americans in jury selection.

*State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 87, citing *Miller-El II*, 545 U.S. at 240-264 and *Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 67.

---

[2] In Texas at the time of Miller-El's trial, "during voir dire in * * * criminal case[s], either side [could] literally reshuffle the cards bearing panel members' names, thus rearranging the order in which members of a venire [were] seated for questioning." *Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 67, fn. 1, citing *Miller-El II*, 545 U.S. at 253. "Once the order [was] established, the panel members seated at the back [were] likely to escape *voir dire* altogether * * *." *Miller-El II* at 253. As a result, the State of Texas could manipulate the likelihood that black jurors would be seated on the jury by rearranging the order of venire questioning until few, if any, black prospective jurors remained seated in the front.

{¶18} Hawkins concedes that three of the factors identified by the United States Supreme Court in *Miller-El II* are inapplicable to the instant case. (Appellant's Reply Brief at 2). The State did not employ practices such as jury shuffling during the selection of Hawkins's jury, and there is no evidence that the Allen County prosecutor's office has historically discriminated against black potential jurors in the jury-selection process. *See Frazier* at ¶ 68. Moreover, an examination of the transcript of the entire voir dire process does not reveal that the State systematically asked black potential jurors different questions—either in tone or in substance—than it asked non-black potential jurors. Thus, there is no evidence of the type of disparate questioning present in *Miller-El II*. *See id.* at ¶ 70. Nevertheless, Hawkins argues that the "bare statistics" as well as the similarities between B.E. and non-black prospective jurors who were seated on the jury demonstrate that the State's race-neutral reasons for striking B.E. were merely pretextual.

{¶19} We conclude that Hawkins's arguments are without merit and that the trial court's rejection of Hawkins's *Batson* challenge is not clearly erroneous. First, we conclude that the "bare statistics" do not support an inference that B.E. was excluded from the jury because of her race. Although the record is largely silent on the issue, from isolated statements of the parties made during the voir dire process and from the parties' appellate briefs, it appears that the jury pool for Hawkins's

trial contained only three eligible black potential jurors: T.M., B.E., and L.S., a 61-year-old black male. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 145); (Appellant's Brief at 13-14); (Appellee's Brief at 11-12). Of these three black prospective jurors, only L.S. served on the jury in Hawkins's trial. (*See* Doc. Nos. 85, 86). Thus, as far as can be discerned from the available record, the State used its peremptory challenges to excuse two-thirds of all black prospective jurors in the jury pool.

{¶20} Yet, the "bare statistics" in this case are readily distinguishable from those "remarkable" numbers in *Miller-El II* that supported the Supreme Court's conclusion that the State of Texas exercised its peremptory challenges in a discriminatory fashion. In *Miller-El II*, "[o]ut of 20 black members of the 108-person venire panel for Miller-El's trial, only 1 served. Although 9 were excused for cause or by agreement, 10 were peremptorily struck by the prosecution." 545 U.S. at 240-241, citing *Miller-El I*, 537 U.S. at 331. "'The prosecutors used their peremptory strikes to exclude 91% of the eligible African-American venire members * * *.'" *Id.* at 241, quoting *Miller-El I* at 342. The Supreme Court concluded that "'[h]appenstance [was] unlikely to produce this disparity.'" *Id.*, quoting *Miller-El I* at 342.

{¶21} In contrast, the "bare statistics" in this case are not nearly as alarming as those in *Miller-El II*. Indeed, two-thirds of the black prospective jurors present for jury duty were dismissed by the State through the use of peremptory challenges.

However, T.M., B.E., and L.S. were apparently the only three black potential jurors out of the 54 potential jurors that returned their juror questionnaires. Thus, the relative scarcity of black jurors on Hawkins's jury could have resulted from the small number of black prospective jurors randomly selected for the original jury pool. *See Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 69 (concluding that Frazier's *Batson* claims were not supported by the "bare statistics" where only 6 black potential jurors were in the original jury pool of 86 and only 3 black potential jurors were in the final jury pool of 44). *See also State v. Frazier*, 9th Dist. Summit No. 25338, 2011-Ohio-3189, ¶ 34; *Smith*, 2010-Ohio-1721, at ¶ 89; *State v. Hunter*, 2d Dist. Montgomery No. 22201, 2008-Ohio-2887, ¶ 19.

{¶22} Secondly, although we recognize a number of important similarities between B.E. and some of the potential jurors who ultimately served on the jury, we conclude that these similarities do not definitively show that the State's race-neutral reasons for excusing B.E. were pretextual. Furthermore, at least with regard to the State's third race-neutral reason for excusing B.E., there were meaningful differences between B.E. and the other potential jurors.

{¶23} The State's first race-neutral reason for exercising a peremptory challenge against B.E. was that the State intended to present "computerized and technical" evidence against Hawkins and that it believed that this evidence would be better received by a younger audience; as a result, the State felt that B.E.—at 65

years old—was ill suited to evaluate this evidence. (Dec. 18-20, 2017 Tr., Vol. I, at 147-148). To bolster this justification further, the State noted that it relied on a similar reason to dismiss 74-year-old M.M. (*Id.*). However, unlike M.M.—who, during voir dire, stated that he does not use the internet, own a computer, or have a smartphone—B.E. did not express an unfamiliarity with newer technologies. (*See id.* at 67-68, 78-79). Notably, when Hawkins's trial counsel asked the entire venire whether any of them did not use the internet, B.E. did not respond. (*Id.* at 67). Thus, it appears that the State's alleged concerns about B.E.'s technological aptitude arose entirely from its belief that B.E.'s age correlated negatively with a capacity to understand "computerized and technical" evidence. Yet, the final jury in Hawkins's trial featured four jurors aged 60 to 63. (*See* Juror No. 546 Questionnaire); (Juror No. 574 Questionnaire); (Juror No. 669 Questionnaire); (Juror No. 565 Questionnaire). Furthermore, one of the alternate jurors was 68 years old. (*See* Juror No. 721 Questionnaire). The final jury, including alternate jurors, featured five people who were older than or of comparable age to B.E., and the State did not seek to use any of its remaining peremptory challenges to excuse these potential jurors on account of their ages.

{¶24} Additionally, the State's second race-neutral reason for exercising a peremptory challenge against B.E.—her nervousness or trepidation at being called to serve on the jury—could apply similarly to at least one other potential juror who

-17-

was eventually seated on Hawkins's jury. During direct questioning at voir dire, the following exchange took place between the State and B.E.:

[The State]:     What did you think about the concept of jury duty and having to come in here today?

[B.E.]:     Scared

* * *

[The State]:     Scared about the unknown, not knowing?

[B.E.]:     Right.

[The State]:     * * * What made you kind of nervous or anxious about it?

[B.E.]:     Just coming into the courtroom.

[The State]:     * * * Now that you're here[,] are you feeling a little bit more comfortable?

[B.E.]:     About as comfortable as I can get.

[The State]:     * * * Is there anything about the reaction that you had to possibly serving on a jury that you feel would overwhelm you to the extent that you couldn't be fair or impartial?

[B.E.]:     No.

> [The State]: \* \* \* So, notwithstanding some trepidation about, some hesitancy about what to expect[,] you're willing to, if seated, to follow the oath, listen to the evidence, evaluate the testimony and reach a fair decision under the law \* \* \*?
>
> [B.E.]: I can do that.

(Dec. 18-20, 2017 Tr., Vol. I, at 45-47). Later, when questioning a different potential juror, the State asked: "What was your general reaction when you got called for jury duty?" (*Id.* at 107). Eventually, that juror stated that she was "just nervous" as she had "never done this before \* \* \*." (*Id.* at 108). However, in contrast to its questioning of B.E., the State did not inquire further to determine whether this juror could be fair and impartial despite her nervousness. (*See id.* at 108-109).

{¶25} With regard to these similarities between B.E. and the potential jurors who were permitted to serve on the jury, Hawkins argues that if "a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El II*, 545 U.S. at 241, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097 (2000). However, while courts can consider the extent to which the

State's race-neutral reasons also apply to potential jurors against whom the State did not exercise peremptory challenges, such similarities are not necessarily conclusive proof that the State's proffered race-neutral justifications are pretextual. *See State v. Massalay*, 10th Dist. Franklin No. 15AP-544, 2016-Ohio-779, ¶ 52 (noting that although "statistics of peremptory challenges used to strike African-American venire members," another one of the factors identified in *Miller-El II*, "is evidence of purposeful discrimination, it is not conclusive"). Instead, such similarities are just one fact to be considered by the trial court in determining the plausibility of the State's race-neutral reasons "in light of all evidence with a bearing on it." *Miller-El II* at 252. Here, the similarities between B.E. and the other potential jurors who eventually served on the jury in Hawkins's trial do not demand a finding of pretext, especially considering the relevant differences between B.E. and other jurors and additional factors negating an inference of discrimination.

{¶26} Importantly, as to the State's third, and professed "biggest," reason that it "did not care for [B.E.] as a juror," B.E.'s experience as a foster parent is not matched by any other potential juror. On her juror questionnaire, B.E. listed "Foster Parent" as her occupation. (*See* Juror No. 109 Questionnaire). In addition, the following exchange took place between B.E. and Hawkins's trial counsel:

[B.E.]:               * * * I need to stop agreeing to take a lot of
                     children in.  I'm a foster parent.

[Defense Counsel]: Okay.  A lot of hard work.

[B.E.]:　　　　　　　Yes.

[Defense Counsel]: Emotional hard work too, right?

[B.E.]:　　　　　　　Yes.

[Defense Counsel]: Okay.  Taking in kids that have been in troubled

backgrounds and environments, things like that?

[B.E.]:　　　　　　　And parents.

[Defense Counsel]: And parents too?

[B.E.]:　　　　　　　Yes.

[Defense Counsel]: Did you take all ages or usually younger kids * *

*?

[B.E.]:　　　　　　　It's usually a mixture, usually newborns to five,

but we've taken a couple of teenagers * * *

[Defense Counsel]: That's not as easy.

[B.E.]:　　　　　　　* * * [D]on't take them no more.

(Dec. 18-20, 2017 Tr., Vol. I, at 93-94).  Therefore, the record supports that B.E.

had a history of taking in children from "troubled" backgrounds and that some of

them were teenagers.  However, Hawkins argues that other potential jurors had

children and that, as a result, they could also have expressed "false sympathy"

towards him because of their experiences with their own children.  Nevertheless,

the relevant distinction between B.E. and these other jurors is that B.E. had specific experience with children from potentially troubled backgrounds, not that she had experience with children in general. There is no indication in the record that any of the other jurors had comparable experiences with fostering teenagers from such backgrounds, and thus, as to the State's third race-neutral reason, B.E. is dissimilar from the other jurors.

{¶27} Finally, at least one other factor militates against a finding that the State's proffered race-neutral reasons for excusing B.E. were simply excuses for unlawful discrimination. Although T.M. and B.E. were excluded from the jury, the jury in Hawkins's trial was not entirely bereft of black jurors. As noted above, L.S., a 61-year-old black male, served on the jury in Hawkins's trial. Hawkins correctly notes that "[t]he exercise of even one peremptory challenge in a purposefully discriminatory manner * * * violate[s] equal protection." *State v. Gowdy*, 88 Ohio St.3d 387, 393 (2000), citing *White*, 85 Ohio St.3d at 436. Thus, a trial court may find that the State exercised a peremptory challenge in a discriminatory manner in violation of *Batson* even when the final jury includes persons of the same race as the improperly excluded potential juror. *See id.* However, while "[t]he presence of African-Americans on a jury certainly does not preclude a finding of discrimination," "'"the fact may be taken into account * * * as one that suggests that the government did not seek to rid the jury of persons [of a particular] race."'" *State*

*v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 92, quoting *White* at 438, quoting *United States v. Young-Bey*, 893 F.2d 178, 180 (8th Cir.1990); *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 75. Here, the impaneled jury included a black juror, L.S. In addition, the State only used three of its four peremptory challenges. *See Pickens* at ¶ 92; *Were* at ¶ 75. Although L.S.'s presence on the jury and the State's failure to exercise its final peremptory challenge to exclude L.S. would not alone defeat a claim of discriminatory intent, we conclude that, when viewed in conjunction with the factors discussed above, these facts serve to negate an inference of discriminatory intent.

{¶28} In light of the foregoing discussion, we are not left with a definite and firm conviction that the trial court mistakenly credited the State's race-neutral reasons for exercising a peremptory challenge against B.E. As a result, we conclude that the trial court's decision rejecting Hawkins's *Batson* challenge is not clearly erroneous.

{¶29} In addition, we reject Hawkins's second argument under his first assignment of error. Hawkins argues that his trial counsel challenged the dismissal of both T.M. and B.E. under *Batson* and that because the trial court found a prima facie case of discrimination based on the State's pattern of striking T.M. and B.E., the trial court erred by not requiring or allowing the State to provide race-neutral reasons for using its first peremptory challenge to dismiss T.M. (Appellant's Brief

at 20-22). However, on a close reading of the relevant parts of the record, we conclude that Hawkins's trial counsel specifically objected only to the exclusion of B.E. under *Batson*; Hawkins's trial counsel did not object to T.M.'s exclusion. First, Hawkins's trial counsel only referenced T.M. in the context of his argument that B.E. was improperly excluded from the venire because of her race; he did not independently allege that T.M. was, herself, unconstitutionally excluded from the jury pool. (*See* Dec. 18-20, 2017 Tr., Vol. I, at 145-147). Moreover, the State, Hawkins's trial counsel, and the trial court all spoke of Hawkins's *Batson* objection as concerning only a single strike, rather than as addressing multiple strikes. (*See, e.g.*, *id.* at 146) ("And so I would raise a challenge to *the strike*, based upon *Batson v. Kentucky* * * *.") (Emphasis added.). Finally, that Hawkins's trial counsel did not insist that the trial court ask the State to provide race-neutral reasons for using a peremptory challenge to excuse T.M. implies that his *Batson* objection did not extend to T.M. Thus, because Hawkins's trial counsel did not lodge a *Batson* objection to the State's use of a peremptory challenge to dismiss T.M., the trial court did not err by failing to require the State to provide race-neutral reasons for her exclusion.

{¶30} Hawkins's first assignment of error is overruled.

**Assignment of Error No. II**

**Defense counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States**

**Constitution and Article I, Section 10 of the Ohio Constitution.** *Strickland v. Washington*, **466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (Trial Tr. vol. 1, p. 146-154).**

**{¶31}** In his second assignment of error, Hawkins argues that he received ineffective assistance of counsel. Specifically, Hawkins argues that he received ineffective assistance of counsel because his trial counsel failed to raise a *Batson* objection to the State's use of a peremptory challenge to dismiss T.M.

**{¶32}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's

essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

**{¶33}** Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

**{¶34}** Hawkins's ineffective assistance of counsel argument is without merit. As discussed in detail under Hawkins's first assignment of error, Hawkins's trial counsel did not properly raise a *Batson* objection to the State's use of a peremptory challenge to excuse T.M. As a result, the State was not afforded an opportunity to offer any race-neutral reasons for excluding T.M. Accordingly, there is no way to determine whether the State had race-neutral reasons for excusing T.M. or whether the trial court would have accepted the State's justifications, if any. *See State v. Burks*, 10th Dist. Franklin No. 07AP-553, 2008-Ohio-2463, ¶ 57. In other words, there is no conclusive means of proving that Hawkins would have been tried by a different jury had his trial counsel properly raised a *Batson* objection to T.M.'s dismissal. As this court previously observed:

> "We do not presume prejudice from a trial counsel's failure to raise
> a *Batson* challenge, and, as here, without an adequate record, we

cannot properly consider on direct appeal a claim of ineffective assistance of counsel for a trial counsel's failure to raise a *Batson* objection."

*State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 93, quoting *Burks* at ¶ 57, citing *State v. Belcher*, 10th Dist. Franklin No. 86AP-982, 1987 WL 17386 (Sept. 15, 1987). As we cannot properly consider the merits of Hawkins's claim from the inadequate record before us, we decline to address whether Hawkins's trial counsel's failure to raise a *Batson* objection in relation to the State's use of a peremptory challenge to dismiss T.M. deprived Hawkins of the effective assistance of counsel. *See May* at ¶ 93-95; *State v. Lewis*, 2d Dist. Montgomery No. 23850, 2011-Ohio-1411, ¶ 143; *Burks* at ¶ 57; *State v. Whatley*, 8th Dist. Cuyahoga No. 86267, 2006-Ohio-2465, ¶ 73-77 (McMonagle, J., concurring).

{**¶35**} Hawkins's second assignment of error is overruled.

{**¶36**} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**