[Cite as *State v. Rose*, 2024-Ohio-1845.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-23-02

    v.

BRYANT A. ROSE,

                                   O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2021 0028**

**Judgment Affirmed**

**Date of Decision: May 13, 2024**

---

APPEARANCES:

    *Max Hersch* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Bryant A. Rose ("Rose"), appeals the December 12, 2022 judgment issued by the Allen County Court of Common Pleas. Following a jury trial, Rose was found guilty of committing abduction and misdemeanor assault, but not guilty of other charges. The trial court sentenced Rose to an aggregate three-year prison term. He now challenges the trial court's ruling on a *Batson* claim he made during voir dire. For the reasons that follow, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

{¶2} On March 12, 2021, Rose was indicted on three counts: felonious assault (with a firearm specification), abduction (with a firearm specification), and having weapons while under disability. The indictment stemmed from an alleged incident on January 29, 2021 while Rose was hosting an afterhours party with his significant other at the time, Janiece Spencer ("Spencer"). According to the State, Rose and Spencer got into an argument, which led to Rose assaulting Spencer with a gun in an upstairs bathroom and not letting her leave that room.

{¶3} The case eventually proceeded to a three-day trial starting on October 18, 2022. During voir dire, the following exchanges took place with a potential juror, a black man who became the subject of Rose's *Batson* claim:

> [Prosecutor]:          Are you working or anything right now?

[Potential Juror]:    I do YouTube content.

* * *

[Prosecutor]:    YouTube content?  What kind of content do you make?

[Potential Juror]:    Just anything that's popular right now to put it on my channel.

[Prosecutor]:    Okay.  How long have you been doing that for?

[Potential Juror]:    Since February.

* * *

[Prosecutor]:    What else do you like to do in your free time besides make content for YouTube?

[Potential Juror]:    Sometimes I just like to think to myself; you know?

[Prosecutor]:    Think to yourself?

[Potential Juror]:    Yea.

* * *

[Defense Counsel:]    [S]o, if you were set for life with money and it wasn't an issue what career path or job would you want?

[Potential Juror]:    I wouldn't take a career path.  I would just move down to Miami and get with as many women as I can.

[Defense Counsel:]    All right.  An honest answer.  You work with a lot of music, right?  Would you do music down there?

[Potential Juror]:    Probably.  Probably.

(Oct. 18, 2022 Tr. at 55-56, 123). Other prospective jurors had responded to the question about what career path or job they would want if money wasn't an issue with answers such as being a sports reporter, being a veterinarian, traveling across the country with their spouse, traveling and helping people who have to deal with trauma in their lives, and going to culinary school. (*Id.* at 114-15, 120-22).

**{¶4}** The State used a peremptory strike on the potential juror. (*Id.* at 160). Rose's trial counsel then asked for a sidebar, where he said:

> I just have to make a record. It appears, at least to the defense, that there are four African-Americans on the jury panel as it exists right now, including [the potential juror]. We struck one, but we struck her because of her relationship, prior relationship, with our client. The State has now used a peremptory challenge to strike an African-American juror. I think there's – well, Batson is close to be implicated. There's some authority out there that even a first strike of a minority juror in a pool this small can still be considered a Batson type issue. So, we would ask at this time to find that the possibility of Batson exists and at least have the State put on record a race neutral reason for striking [the potential juror].

(*Id.*). The judge then asked if the State wanted to respond, and the State provided an explanation for its strike that included: (1) the potential juror having "no desire to be here," evidenced by him "often looking at the ceiling and not paying attention"; (2) some of his answers were joking, such as his response about what career path or job he would want if money were not an issue; and (3) he is a YouTube content creator. (*Id.* at 160-61). After the State's explanation, the judge asked if the defense had anything further, to which Rose's trial counsel responded, "No." (*Id.*). The judge then found that *Batson* was implicated, decided the State

-4-

expressed race-neutral reasons for its peremptory strike, and overruled Rose's *Batson* claim, thus allowing the strike of the potential juror. (*Id.*).

{¶5} At the end of the trial, Rose was found guilty of the abduction charge and a lesser-included offense of assault, but not guilty of the felonious assault charge, having-weapons-while-under-disability charge, and all firearm specifications. On December 12, 2022, the trial court sentenced Rose to three years in prison for the abduction conviction, and 180 days in jail for the misdemeanor assault conviction, to run concurrently with the sentence for the abduction conviction. This appeal followed.

## II.     ASSIGNMENT OF ERROR

{¶6} Rose raises a single assignment of error for our review:

### Assignment of Error

**The trial court erred when it overruled Bryant Rose's *Batson* challenge. Fourteenth Amendment to the United States Constitution; *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Flowers v. Mississippi*, --- U.S. ---, 139 S.Ct. 2228, 204 L.E.2d 638 (2019); T.p. 160-161.**

## III.     DISCUSSION

{¶7} In his assignment of error, Rose argues that he established a prima facie case of racial discrimination in the State's striking of the potential juror; the State's reasons for striking the potential juror were merely pretextual; and the trial court erred in overruling Rose's *Batson* claim. According to Rose, a new trial is therefore required. We disagree.

### A. Applicable Law

**{¶8}** "A defendant has 'the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 49, quoting *Batson v. Kentucky*, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "Accordingly, a constitutional violation occurs when the prosecution challenges 'potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.'" *Id.*, quoting *Batson* at 89; *see also* Sixth and Fourteenth Amendments to the U.S. Constitution. "[E]ven a single instance of race discrimination against a prospective juror is impermissible" under the Equal Protection Clause. *Flowers v. Mississippi*, 588 U.S. 284, 300, 139 S.Ct. 2228, 204 L.Ed.2d 638 (2019).

#### 1. Three-step test for *Batson* claims

**{¶9}** The U.S. Supreme Court in *Batson* established a three-step test for adjudicating race-based preemptory challenges to prospective jurors. *Thompson* at ¶ 50, citing *Batson* at 96. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. *Id.* at ¶ 50. Second, if the opponent satisfied that burden, then the burden shifts to the State to provide a neutral explanation for challenging the black juror. *Id.* at ¶ 51. "'[U]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed

race neutral." *Id.*, quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

{¶10} At the third step, the trial court must decide, based on all of the circumstances, whether the opponent of the peremptory challenge has established purposeful racial discrimination. *Id*. at ¶ 52; *Batson* at 98. "The trial judge must determine whether the prosecutor's stated reasons [for the strike] were the actual reasons or instead were a pretext for discrimination." *Flowers* at 298. In doing so, "[t]he court must 'assess the plausibility of' the prosecutor's reason for striking the juror 'in light of all evidence with a bearing on it.'" *Thompson* at ¶ 52, quoting *Miller-El v. Dretke*, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Relevant factors may include: the prosecutor's demeanor; the reasonableness, or improbability, of the explanation(s); and whether the proffered rationale has some basis in accepted trial strategy. *Id.* Race-neutral reasons for peremptory challenges often invoke a juror's demeanor, "'making the trial court's firsthand observations of even greater importance.'" *Id.*, quoting *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). The trial court's finding at step three is entitled to deference because it turns largely on evaluating credibility. *Id.* at ¶ 53.

{¶11} "The ultimate inquiry is whether the State was 'motivated in substantial part by discriminatory intent.'" *Flowers*, 588 U.S. at 303, quoting *Foster v. Chatman*, 578 U.S. 488, 513, 136 S.Ct. 1737, 195 L.E.2d 1 (2016). "The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from,

the opponent of the strike." *State v. Gowdy*, 88 Ohio St.3d 387, 393, 727 N.E.2d 579 (2000).

### 2. Standard of review

{¶12} Appellate courts will not reverse a trial court's ruling that there was "'no discriminatory intent'" in striking a prospective juror unless the ruling was "'clearly erroneous.'" *Thompson*, 2014-Ohio-4751, at ¶ 53, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106. Under the "clearly erroneous" standard of review, a reviewing court can only reverse if it is left with the definite and firm conviction that a mistake has been committed. *State v. Hawkins*, 3d Dist. Allen No. 1-18-08, 2018-Ohio-4649, ¶ 12 (affirming judgment where the trial court overruled a *Batson* claim to the State's peremptory strike of a black prospective juror). "If, however, a trial court does err in applying *Batson*, the error is structural." *Thompson*, 2014-Ohio-4751, at ¶ 53.

### B. Analysis

{¶13} Rose does not argue any error concerning the first two parts of the three-part test for analyzing a *Batson* claim, i.e., that he established a prima facie case of discrimination and that the State offered a race-neutral explanation for exercising its preemptory strike against the potential juror. Rose argues only that the State's reasons were pretextual and, therefore, the trial court erred when it overruled his *Batson* claim. (*See* Appellant's Brief at 7-13).

{¶14} We initially point out that, once the State responded to the *Batson* claim by providing a neutral explanation for striking the potential juror, the trial court gave Rose's counsel an opportunity to respond. (Oct. 18, 2022 Tr. at 161). Rose's counsel declined to do so. (*Id.*). The trial court then overruled the *Batson* claim and allowed the strike. Thus, "the defense never disputed the proffered race-neutral reasons for excusing" the potential juror. *State v. Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, ¶ 52. Given how "*Batson* places the burden of persuasion on the opponent of the strike," we therefore may construe Rose's counsel's "failure to respond to the government's explanation as an indication that he no longer disputed the strike." *Id.*

{¶15} Regardless, even assuming Rose still disputed the strike, we do not find the trial court's ruling met the clearly erroneous standard. By overruling Rose's *Batson* claim, the trial court determined Rose had not established "purposeful racial discrimination" by the State. *Thompson*, 2014-Ohio-4751, at ¶ 52. Based on the record before us, the explanation given by the State for striking the potential juror was plausible, reasonable, and had at least some basis in accepted trial strategy. The record does not support finding that the State was "motivated in substantial part by discriminatory intent." *Flowers*, 588 U.S. at 303.

{¶16} For example, courts from Ohio and around the nation have recognized that a prospective juror not taking the proceedings seriously may be a legitimate, non-pretextual reason for exercising a peremptory challenge. *E.g., State v.*

*Williams*, 8th Dist. Cuyahoga No. 96244, 2011-Ohio-4126, ¶ 9-10 (Stewart, P.J.) (prospective juror not taking the proceeding seriously was an "expressly unambiguous, facially race-neutral, void of inherent discriminatory intent, and at the very least, plausible" reason to strike the prospective juror because, if accurate, it would have "an adverse effect on the ability of the prospective candidate[] to successfully perform as" a juror); *People v. Powell*, 224 Ill.App.3d 127, 132, 586 N.E.2d 589 (1991) (trial court did not err in finding no purposeful discriminatory intent in striking black prospective juror "when it appears as though this prospective juror did not take the proceedings seriously"). Here, striking the potential juror because he was not taking the proceeding seriously—as shown, for example, by saying that, if money were not an issue, he would not seek a job but would get with as many women as he could—was a plausible reason to strike him, without indication of pretext or purposeful discriminatory intent (particularly given that the case involved a woman as the alleged victim).

**{¶17}** Importantly, a trial judge is in the best position for evaluating a prospective juror's demeanor to ascertain if the prosecutor's demeanor-based reasons for exercising the peremptory strike are valid. A trial judge is also in position to observe the prosecutor for purposes of assessing his or her credibility in setting forth a race-neutral basis for using the strike. In this manner, the trial court can best decide "whether the defendant met his burden of proving purposeful discrimination." *Gowdy*, 88 Ohio St.3d at 394-95 ("only the trial court was able to

listen to [prospective juror's] tone of voice, and his inflection, and to observe his mannerisms and overall demeanor and that of the prosecutor," while an appellate court only has a transcript to review). In this case, the trial court was in the best position to view the demeanor of the jurors and assess the prosecutor's assertion that this particular potential juror appeared to have "no desire to be here." This is true even if the judge did not personally observe the potential juror "often looking at the ceiling and not paying attention." Likewise, the trial court was in the best position to observe the prosecutor's demeanor and candor when the prosecutor proffered reasons in support of the peremptory strike. *See Moseley*, 2010-Ohio-3498, at ¶ 54 (even if the judge had not observed the juror "with her head down and eyes closed," the judge's ruling on the *Batson* challenge "could have been validly based on the judge's personal observation of the prosecutor's demeanor during the prosecutor's explanation of his proffered reasons").

{¶18} Rose contends that comparing the potential juror's answers to those of other prospective jurors bolsters a finding of pretext. Among the evidence a defendant may present to help establish purposeful racial discrimination are "side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case." *Flowers*, 588 U.S. at 302; *see also Miller-El*, 545 U.S. at 241 ("[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination to

be considered at *Batson's* third step"). Looking at the question posed to prospective jurors about what job they would want if money wasn't an issue, Rose argues that "many prospective jurors stated that they would no longer work, but would instead travel—mostly to somewhere warm," which, according to Rose, "was the essence of [the potential juror's] answer too." (Appellant's Brief at 12).

**{¶19}** We preliminarily note that the transcript does not allow us to determine which answers were given by black prospective jurors and which were given by non-black prospective jurors. Rose admits "the record here does not disclose the races of the prospective jurors, except that there were three Black jurors remaining after the prosecution struck [the potential juror]." (*Id.*). Yet, even if we assume the other answers were given by non-black prospective jurors, all of them were materially distinguishable from the last part of this particular potential juror's answer: "I wouldn't take a career path. I would just move down to Miami *and get with as many women as I can.*" (Emphasis added.) (Oct. 18, 2022 Tr. at 123). Therefore, we do not find the answers of other prospective jurors support a finding of pretext in the State's reason for striking him. *Hawkins*, 2018-Ohio-4649, at ¶ 22, 26 (finding non-racial meaningful differences between the answers of black prospective jurors and the other potential jurors).

**{¶20}** Additionally, it is without dispute that the answer of this potential juror to "get with as many women as I can" could reasonably be taken as being in poor

taste or crude. Such an answer made in the context of jury selection in a serious felony trial further shows the potential juror was not taking the matter seriously.

**{¶21}** Rose also argues the State did not identify any other answers by this potential juror as joking. First, this ignores how Rose—as the opponent of the strike—is the one who has the "ultimate burden of persuasion regarding racial motivation." *Gowdy*, 88 Ohio St.3d at 393. Second, as referenced above, Rose did not raise this argument during the trial court proceedings. Third, this potential juror's response that "[s]ometimes I just like to think to myself; you know?"—in response to the prosecutor's question about what he likes to do in his free time— was a curious answer that may further indicate he was not taking the proceedings seriously.[1]

**{¶22}** In summary, "[t]he trial court was in the best position to weigh the credibility of the state's explanations in determining whether the state exercised its peremptory challenges with a discriminatory intent." *State v. Sanon*, 1st Dist. Hamilton No. C-220125, 2023-Ohio-2742, ¶ 44 (allowing the State to exercise its peremptory challenges was not clearly erroneous). Based on the record before us, we do not find the trial court's decision was clearly erroneous in determining Rose had not established purposeful racial discrimination. *Gowdy*, 88 Ohio St.3d at 394-395 ("we give great deference to the trial court who was in the best position to make

---

[1] In support of his appeal, Rose relies heavily on two Eighth District cases: *State v. Kirk*, 8th Dist. Cuyahoga Nos. 107527 and 107553, 2019-Ohio-3887 and *State v. Strong*, 8th Dist. Cuyahoga No. 100699, 2015-Ohio-169. However, both are materially distinguishable.

the determination of whether the defendant met his burden of proving purposeful discrimination"). We are not left with the definite and firm conviction that the trial court committed a mistake in overruling Rose's *Batson* claim to the State's peremptory strike of the potential juror.

## IV. CONCLUSION

{¶23} For the foregoing reasons, Appellant's assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

*Judgment Affirmed.*

**ZIMMERMAN AND ZMUDA, J.J**

**\*\* Judge Gene A. Zmuda of the Sixth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**