[Cite as *State v. Erby*, 2018-Ohio-3695.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27799 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-394 |
| | : | |
| TYRELL D. ERBY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 14th day of September, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 N. Pioneer Boulevard, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Tyrell D. Erby appeals from a Montgomery County Common Pleas Court judgment that convicted and sentenced him for reckless homicide, with a firearm specification, tampering with evidence, and obstructing official business. The judgment of the trial court will be affirmed.

*Factual Background and Procedural History*

{¶ 2} At about 2:20 p.m. on February 3, 2017, Erby called 911 to report that his girlfriend, Taylor McKee, had been shot and "I think she's dead." Erby told the 911 operator that he and McKee had been walking in Trotwood when she was struck by a bullet from an unknown source. He said that he carried McKee to his house, but she was not breathing.

{¶ 3} When officers responded to Erby's residence, two men (Erby and his friend Jibri Carr) came out and directed them to Erby's bedroom, where Sergeant Brandon Holbrook found McKee on the floor with gunshot wounds to her left arm and chest. McKee was "cold to the touch" and had no detectable pulse. After medics arrived and removed McKee's body, Sgt. Holbrook and another officer examined the bedroom and found "minimal" amounts of what appeared to be blood on the carpet, bed, and wall.

{¶ 4} While Sgt. Holbrook was inside the house, officers spoke with Erby and Carr outside before transporting them to the police station, where Detective Natalie Watson interviewed them separately. Carr told Det. Watson that he received an "urgent" call from Erby at approximately 1:34 p.m. that day, asking him to come to Erby's house "ASAP." Erby then called Carr a second time, sounding "scared" and "crying," before finally telling Carr in a third call at 1:45 p.m. that McKee had been shot. When Carr arrived at Erby's

house, he found McKee lying on Erby's bedroom floor with gunshot wounds. Carr instructed Erby to apply pressure to the wounds and to call 911, which Erby did. The police arrived soon thereafter.

{¶ 5} During his interview with Det. Watson, Erby initially repeated the same story he told the 911 operator. He said that he carried McKee from the shooting scene to his house by cutting past a nearby daycare center. Det. Watson sent another detective to view surveillance footage from the daycare center in order to verify Erby's story. After being told that neither he nor McKee was visible on that footage, Erby admitted that they would not be. He then related a different version of McKee's shooting.

{¶ 6} Erby said that he was lying in bed with McKee when, through his bedroom window, he saw two unknown males standing in the front yard. He left the bed and removed a .380 caliber semi-automatic handgun from his bedroom nightstand where he had stored it, wrapped in a blue bandana, since purchasing it three months earlier. Erby said that he previously had never fired the gun and had no formal firearms training, but had done internet research to try to learn enough to avoid hurting himself. He walked to the front door, which he opened when someone knocked. There he saw a third unknown male, to whom he displayed the gun, believing that the three men were planning a burglary. All three men fled on foot.

{¶ 7} According to Erby, he locked the front door and returned to his bedroom in a "hyped up" state. McKee remained on the bed, lying on her right side with her left side exposed. Erby walked toward the nightstand to return the gun, "waving" it as he explained to McKee what had happened. With the gun in his right hand and his finger on the trigger, the gun discharged, hitting McKee. His written statement said, "I was hyped up, waving

my gun, and accidentally shot her."

{¶ 8} Erby at first claimed to have disposed of the gun in a trashcan on the street. Later, however, he told police where the weapon could be found inside his home. Pursuant to a search warrant, officers located the gun, along with a spent shell casing and a single live round, inside a white trash bag concealed in the corner of the garage.[1] The gun was wrapped in a blue bandana. Inside the gun was a magazine loaded with several additional rounds. Another loaded magazine was found in a box inside Erby's closet.

{¶ 9} McKee died as the result of a single .380 caliber bullet that passed through her left arm before entering her chest and penetrating her heart and liver. On February 23, 2017, Erby was indicted on one third-degree felony count of reckless homicide in violation of R.C. 2903.041, with a firearm specification; one third-degree felony count of tampering with evidence in violation of R.C. 2921.12(A)(1); and one second-degree misdemeanor count of obstructing official business in violation of R.C. 2921.31(A).

{¶ 10} After pleading guilty on August 25, 2017 to the tampering with evidence and obstructing official business offenses, Erby waived his right to a jury trial on the reckless homicide charge and the accompanying firearm specification. That charge proceeded to a bench trial on September 5, 2017. The parties entered multiple stipulations as to the manner of McKee's death, the operability of Erby's handgun and its identity as the weapon that fired the shot that killed McKee, and the authenticity of the documents, recordings and photographs presented into evidence. The State also presented the testimony of

---

[1] Another spent shell casing later was recovered from Erby's bedroom. Questioned about that second casing, Erby told police that he may have fired two shots, but no corresponding second bullet was found.

three police officers. Erby offered no witnesses or other evidence. Instead, his attorney argued that the State had failed to prove that Erby's conduct was reckless, and that firearm specifications were not intended to apply to an accidental shooting.

{¶ 11} On September 27, 2017, the trial court found Erby guilty beyond a reasonable doubt of reckless homicide and its firearm specification. On October 12, 2017, the court sentenced Erby to 36 months for reckless homicide and three years of actual incarceration on the firearm specification to that offense, 36 months for tampering with evidence, and 90 days for obstructing official business, with the sentences for reckless homicide, tampering with evidence and the firearm specification to be served consecutively and the sentence for obstructing official business to run concurrently with the other sentences. The aggregate sentence totaled nine years of imprisonment.

{¶ 12} Erby appeals from the trial court's judgment, asserting two assignments of error:

1) The State failed to supply sufficient evidence as to all the elements necessary to support the charge against [Erby].

2) The trial court's verdict should be reversed as it was against the manifest weight of the evidence.

### *Reckless Homicide and Accompanying Firearm Specification*

{¶ 13} R.C. 2903.041 provides that whoever "shall recklessly cause the death of another" is guilty of reckless homicide. Under R.C. 2901.22(C),

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be

of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 14} Where a firearm specification has been included in the indictment, a court may impose an additional three-year mandatory prison term on a defendant convicted of reckless homicide if that defendant "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.

### *Sufficiency of the Evidence*

{¶ 15} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary (6 Ed.1990) 1433. "Sufficiency" is essentially "a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

{¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 17} An appellate court reviews the denial of a Crim.R. 29 motion to dismiss using the same standard of review that is used to review a sufficiency-of-the-evidence claim. *State v. Cassel*, 2016-Ohio-3479, 66 N.E.3d 318, ¶ 16 (2d Dist.). Even where no Crim.R. 29 motion was made in the trial court, however, "a defendant's 'not guilty' plea preserves the right to object to an alleged insufficiency of evidence." *State v. Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, ¶ 28, citing *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992) and *State v. Jones*, 91 Ohio St.3d 335, 346-347, 744 N.E.2d 1163 (2001). *See also State v. Rocowiak*, 2d Dist. Miami No. 2008 CA 12, 2009-Ohio-2550, ¶ 24 (even if sufficiency issue could be waived, "it would remain subject to a plain-error analysis").

*i.     Waiver*

{¶ 18} Erby concedes that his trial attorney "never made a Crim.R. 29 motion at the close of the State's or the defense's case." The State argues that Erby therefore waived any challenge to the sufficiency of the evidence offered in support of his convictions for reckless homicide and the related firearm specification.

{¶ 19} Based on the principle enunciated in *Hill* at ¶ 28, Erby's plea of not guilty to the reckless homicide charge preserved his ability to challenge the sufficiency of the evidence to support his convictions. Accordingly, we will address the merits of Erby's first assignment of error based on the alleged insufficiency of the State's evidence.

*ii.      Sufficiency of evidence regarding reckless homicide*

**{¶ 20}** Having reviewed the trial transcript and all of the evidence presented to the trial court, we conclude that the evidence presented, when construed in the light most favorable to the State, was sufficient to prove beyond a reasonable doubt that Erby was guilty of reckless homicide. Although Erby argues that the evidence does not show that he acted recklessly, a defendant may be guilty of reckless homicide for an unintentional shooting if the evidence supports a finding that he handled a firearm in a reckless manner, resulting in another person's death. *See, e.g., State v. English*, 10th Dist. Franklin No. 13AP-88, 2014-Ohio-89, ¶ 13; *State v. Howse*, 2012-Ohio-6106, 985 N.E.2d 246, ¶ 30-31 (9th Dist.).

**{¶ 21}** In *Howse*, the appellate court affirmed the reckless homicide conviction of a defendant who "cocked a loaded handgun and pointed it at" the victim without having intended to shoot him. *Id.* at ¶ 31. The evidence showed that the defendant "was aware of the risks posed by firearms" yet "acted with heedless indifference to the consequences" of his own handling of a loaded weapon that discharged. *Id.* ¶ 30-31. Similarly, *English* involved a defendant who sat in the backseat of a car, repeatedly flicking the hammer of a shotgun he was holding, when the shotgun fired and killed a person standing outside the vehicle. *English* at ¶ 2. The defendant claimed "that he did not pull the trigger, did not know the gun was loaded, * * * did not see where [the victim] was standing," and did not realize that the subject gun sometimes could discharge without applying pressure to the trigger if the hammer was flicked. *Id.* at ¶ 3, ¶ 8. Nevertheless, the court of appeals concluded that "it was clear that [the appellant's] actions created a risk of harm to nearby

individuals and that appellant perversely disregarded that risk by continuing to play with" part of the firing mechanism of a possibly loaded weapon. *Id.* at ¶ 12-13.

**{¶ 22}** Here, Erby admitted to police both that he knew his handgun was loaded and that he was "waving" it in McKee's vicinity, with his finger on the trigger. Furthermore, the parties stipulated that the forensic pathologist who conducted McKee's autopsy would testify that the bullet that killed McKee was fired from "between 18 and 24 inches" from her arm, and that the forensic firearms expert who examined Erby's gun would testify that it was operable, had no internal defects or malfunctioning components, did not discharge when drop tested, and had fired the bullet that killed McKee.

**{¶ 23}** Given those undisputed facts, the trial court had a reasonable basis for finding that Erby acted recklessly by "waving" what he knew to be a loaded gun within two feet of where McKee was lying on the bed, with his finger on the trigger while he was in an admittedly "hyped up" state. " '[A] firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death' when fired at an individual." *English* at ¶ 11, quoting *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). Although Erby claimed to have believed that the gun's safety was in place, evidence that he handled an inherently dangerous and lethal weapon in the manner he himself described was sufficient to support his reckless homicide conviction.

**{¶ 24}** Moreover, Erby's additional admission that he had very limited familiarity with the weapon he was so handling, having never before fired it or completed any formal firearms training, would further support the trial court's conclusion that he acted recklessly. The defendant in *English* likewise admitted "that he did not have any experience with shotguns or any other firearms" before accidentally killing a person

standing near where he was toying with a loaded weapon. *Id.* The Tenth District Court of Appeals concluded that "messing with" the shotgun's hammer despite his "lack of knowledge" was further evidence that defendant English acted recklessly, even though he was unsure if the gun was loaded. *Id.* Here, where Erby knew that the gun with which he was gesturing was loaded, a finding that he acted recklessly would be even more compelling. Based on the record, there was sufficient evidence for the trial court to find Erby guilty of reckless homicide.

*iii. Sufficiency of evidence regarding firearm specification*

{¶ 25} We also conclude that the State presented sufficient evidence that Erby was guilty of the firearm specification to the reckless homicide offense. Although Erby urges that the evidence did not show that he "displayed" or "brandished" his gun, the evidence *does* support a finding that he "used it to facilitate the offense," in that McKee would not have been fatally shot but for Erby's use of a firearm. That same circumstance presumably was the basis for the firearm specification conviction of the defendant in *English*, which also involved an unintentional shooting that resulted in a reckless homicide and firearm specification conviction. *See English* at ¶ 4.

{¶ 26} Further, a federal court applying Ohio law upheld a firearm specification even where the defendant arguably did not "display" or "brandish" the weapon to the victim, concluding that the evidence could support a finding that the weapon "facilitated the offense" in some other manner. *See Brown v. Konteh*, 567 F.3d 191, 213 (6th Cir.2009). Even assuming that Erby's admitted gesturing with the gun while it was pointed in McKee's direction did not constitute "displaying" or "brandishing" that weapon, which we do not find, the trial court still reasonably could find that Erby used the handgun to

"facilitate" the offense of reckless homicide. The evidence was sufficient to support the firearm specification conviction.

### *Manifest Weight of the Evidence*

**{¶ 27}** In contrast to an argument regarding the sufficiency of evidence, an argument based on the weight of the evidence "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, ¶ 8, quoting *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When reviewing an argument challenging the weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Webber*, 2015-Ohio-2183, 35 N.E.3d 961, ¶ 8 (2d Dist.), quoting *Thompkins*, *78* Ohio St.3d 380, 387, 678 N.E.2d 541.

**{¶ 28}** In effect, an appellate court that reverses a conviction based on the weight of the evidence "sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Given that the jury saw and heard the witnesses at trial, however, "we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Martin* at ¶ 8, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence

weighs heavily against the conviction." *Webber* at ¶ 8, quoting *Thompkins* at 387.

{¶ 29} After reviewing the entire record and weighing the evidence presented at Erby's trial, we cannot conclude that the trial court "clearly lost its way" in finding Erby guilty as charged. As discussed above, undisputed evidence that Erby was "waving" what he knew to be a loaded gun in close proximity to McKee while he was in an excited or agitated state after purportedly chasing off would-be burglars, that he did so with his finger on the trigger while the weapon was pointed in McKee's general direction, and that he did so despite his admitted lack of prior experience handling firearms, suffices to support a finding that Erby acted recklessly in discharging the bullet that killed McKee. In our view, this is not "the exceptional case" in which the evidence weighs heavily toward a finding that Erby's actions were not reckless, but merely negligent, and thus that his conviction of reckless homicide was against the manifest weight of the evidence.

{¶ 30} As to the related firearm specification, we likewise conclude that Erby's conviction was not against the manifest weight of the evidence. The undisputed evidence established that a bullet fired from Erby's gun killed McKee. Because he used a firearm to commit what the trial court reasonably determined was the offense of reckless homicide, Erby's assignment of error based on the manifest weight of the evidence is overruled.

### Conclusion

{¶ 31} The judgment of the trial court will be affirmed.


DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck
Michael J. Scarpelli
Marshall G. Lachman
Hon. Steven K. Dankof