**[Cite as *State v. Totty*, 2026-Ohio-2140.]**

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**

  **v.**

**KIARA S. TOTTY,**

    **DEFENDANT-APPELLANT.**

**CASE NO. 1-24-79**

**OPINION AND
JUDGMENT ENTRY**

**Appeal from Allen County Common Pleas Court
Trial Court No. CR 2022 0272**

**Judgment Affirmed**

**Date of Decision:  June 8, 2026**

**APPEARANCES:**

    *Darren L. Meade* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Kiara S. Totty ("Totty"), appeals the November 8, 2024 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On the evening of October 18, 2021, law enforcement responded to a residence following a 911 call from Totty, who reported that her girlfriend had suffered a self-inflicted gunshot wound. Officers arrived to find the victim with a gunshot wound to the chest, holding a silver revolver. The victim succumbed to her injuries the following day. During her interview with police, Totty claimed that the gun discharged accidentally while the victim was playfully pointing it at herself, maintaining that she believed the weapon was unloaded. However, forensic and autopsy evidence indicated that the double-action revolver was fired from a distance and trajectory that were inconsistent with a suicide.

{¶3} On September 15, 2022, the Allen County Grand Jury indicted Totty on a single count of reckless homicide in violation of R.C. 2903.041(A), (B), a third-degree felony, along with a firearm specification under R.C. 2941.145(A). On September 23, 2022, Totty filed a written plea of not guilty to the charge and specification in the indictment.

{¶4} On October 18, 2023, Totty filed a motion in limine to prohibit the State from offering any of her statements regarding gunshot residue ("GSR") testing. The

State filed a memorandum in opposition to Totty's motion in limine on October 20, 2023. The trial court denied Totty's motion in limine that same day.

{¶5} The case proceeded to a jury trial on October 24-26, 2023, which resulted in a mistrial after the jury was unable to reach a verdict.

{¶6} On March 11, 2024, Totty filed a motion for the appointment of an expert witness, which the State opposed. On March 19, 2024, the trial court denied the motion. Thereafter, on April 8, 2024, Totty filed a motion for leave to hire an independent expert witness, which the trial court granted on April 12, 2024.

{¶7} Following that authorization, Totty filed a motion on May 13, 2024 requesting the release and transportation of evidence to her expert examiner in Fort Worth, Texas. The State opposed the motion on May 28, 2024. That same day, the trial court granted the request as to "the autopsy diagram, autopsy photos and a sample of the alleged victim's clothing but . . . denied [the motion] as to the firearm, fired bullets, fired cartridge case and ammunition." (Doc. No. 196). On July 30, 2024, Totty filed a second motion for the release and transportation of the ballistic evidence to the examiner in Texas, which the trial court again denied.

{¶8} The case proceeded to a second jury trial from September 17-20, 2024, where the jury found Totty guilty of the indicted count and specification. On November 8, 2024, the trial court sentenced Totty to 36 months in prison as to the reckless homicide charge and to three years in prison as to the firearm specification.

The trial court ordered the terms to be served consecutively for an aggregate, mandatory sentence of six years in prison.

{¶9} Totty filed her notice of appeal on December 10, 2024, and raises five assignments of error for our review. For ease of our discussion, we will begin by addressing Totty's second assignment of error, then her first, third, fourth, and fifth assignments of error.

## Second Assignment of Error

**The Trial Court Erred in Admitting Evidence of the Appellants Alleged Refusal to Submit to a Gun Residue Test, as it is More Prejudicial Than Probative Under Rule 403 of the Rules of Evidence.**

{¶10} In her second assignment of error, Totty argues that the trial court erred by admitting evidence of her refusal to submit to GSR testing. Specifically, she contends that, because her refusal was based on her belief that the victim would survive to corroborate her story, her refusal did not indicate a consciousness of guilt, making the evidence more unfairly prejudicial than probative under Evid.R. 403.

### *Standard of Review*

{¶11} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶12}** Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, Evid.R. 403(A) provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶13}** """"If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word 'unfair.'"""" *State v. Sherman*, 2021-Ohio-4532, ¶ 22 (10th Dist.), quoting *State v. Crotts*, 2004-Ohio-6550, ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001). "Thus, '"[u]nfair prejudice is that quality of evidence which might result in an improper basis for a jury decision."'" *Id.*, quoting *Crotts* at ¶ 24, quoting *Oberlin* at 172. "Evidence may be unfairly prejudicial if it '"arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish."'" *Id.*, quoting *Crotts* at ¶ 24, quoting *Oberlin* at 172. "Often, though not always, evidence is unfairly prejudicial if it appeals to the jury's emotions rather than the jury's intellect." *Id.*

**{¶14}** The trial court did not abuse its discretion by admitting evidence of Totty's refusal to submit to GSR testing. Importantly, courts widely accept that a defendant's evasive actions—such as fleeing, escaping custody, resisting arrest,

hiding, or using a false identity—are admissible to demonstrate a consciousness of guilt and, by extension, guilt itself. *State v. Grindstaff*, 2014-Ohio-2581, ¶ 22 (12th Dist.). *But see State v. Arnold*, 1992 Ohio App. LEXIS 6215, *7 (11th Dist. Dec. 11, 1992) (explaining that not all chemical test refusals indicate a consciousness of guilt, as a good-faith refusal based on a desire to consult with counsel first is not an evidentiary refusal). In this case, the central dispute at trial was the identity of the shooter and whether Totty handled the firearm. Thus, because Totty's refusal to undergo GSR testing was directly probative of this critical factual dispute, its probative value was exceptionally high, which correspondingly decreases the risk that its admission was *unfairly* prejudicial. *Accord Sherman* at ¶ 23, citing *State v. Smith*, 2020-Ohio-4441, ¶ 50 (noting that "'[a]s the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of *unfair* prejudice decreases'"), quoting *State v. Hartman*, 2020-Ohio-4440, ¶ 31.

{¶15} Moreover, even though Totty offered an alternative, innocent explanation for her refusal—namely, her belief that the victim would survive the shooting to corroborate her story—this explanation goes to the weight and credibility of the evidence for the jury to resolve, not its threshold admissibility. *See State v. Powell*, 683 So.2d 1281, 1291 (La.App. 1996) (explaining that, while a defendant may offer an innocent explanation for conduct otherwise indicating a consciousness of guilt, resolving that interpretation is a matter of weight and

credibility for the factfinder). *See also State v. Suggs*, 2024-Ohio-1961, ¶ 31 (9th Dist.) (affirming that, while evidence of flight indicates a consciousness of guilt, it is within the province of the jury to weigh the credibility of the defendant's claims that he was not actively involved in the offense).

{¶16} Consequently, because the admission of Totty's refusal to submit to the GSR testing appealed to the jury's intellect to weigh her actions rather than improperly arousing emotional sympathies or an instinct to punish, the trial court did not abuse its discretion by determining that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not abuse its discretion by admitting evidence of Totty's refusal to submit to GSR testing.

{¶17} Totty's second assignment of error is overruled.

### First Assignment of Error

**There was Insufficient Evidence to Convict Appellant, and the Trial Court Accordingly Erred in Denying her Rule 29 Motion to Dismiss.**

{¶18} In her first assignment of error, Totty argues that her conviction for reckless homicide is not supported by sufficient evidence.[1] Specifically, she contends that the State failed to present sufficient evidence that she acted recklessly, arguing instead that the evidence demonstrated only negligent conduct.

---

[1] Totty does not challenge her firearm specification conviction.

*Standard of Review*

{¶19} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.), citing *State v. Williams*, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Analysis*

{¶20} Totty was convicted of reckless homicide under R.C. 2903.041, which provides, in relevant its part, that "[n]o person shall recklessly cause the death of another . . . ." R.C. 2903.041(A). Ohio law defines the mens rea of recklessness as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). To fully evaluate reckless conduct, Ohio law distinguishes between a risk and a substantial risk. A "risk" is defined as "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(7). A "substantial risk," however, requires "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

**{¶21}** On appeal, Totty argues only that a rational trier of fact could not have found that she acted recklessly. She argues that the evidence presented at trial demonstrates, at best, that she acted negligently. Because it is the only element that Totty challenges on appeal, we will review the sufficiency of the evidence supporting only whether she acted recklessly.

**{¶22}** "Generally, the intent of a person cannot be proven by direct evidence, thus proof of intent may be shown from circumstantial evidence." *State v. Cole*, 2011-Ohio-409, ¶ 23 (3d Dist.). "Circumstantial evidence is '"the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common

experience of mankind."'" *Id.*, quoting *State v. Fisher*, 2010-Ohio-5192, ¶ 26 (3d Dist.), quoting *State v. Duganitz*, 76 Ohio App.3d 363, 367 (8th Dist. 1991).

**{¶23}** Circumstantial evidence has no less probative value than direct evidence. *State v. Griesheimer*, 2007-Ohio-837, ¶ 26 (10th Dist.). *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."); *State v. Miller*, 2016-Ohio-7606, ¶ 61 (8th Dist.) (stating that "circumstantial evidence alone is sufficient to support a conviction"). "'[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Miller* at ¶ 61, quoting *Jenks*, 61 Ohio St.3d at 272. "'"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence."'" *Id.*, quoting *State v. Hawthorne*, 2011-Ohio-6078, ¶ 9 (8th Dist.), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

**{¶24}** A person acts recklessly when they consciously ignore a known and significant risk that their actions will cause a specific result, showing no concern for the consequences. *State v. Peck*, 2007-Ohio-2730, ¶ 11 (10th Dist.). "A mere failure to perceive or avoid a risk, because of a lack of due care, does not constitute reckless conduct." *Id.* at ¶ 12. "Instead, one must recognize the risk of the conduct and proceed with a perverse disregard for that risk." *Id.*

{¶25} "In contrast to the actor who proceeds with knowledge of a risk, the failure of a person to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature is negligence." *Id.* at ¶ 13, citing R.C. 2901.22(D). Ultimately, the distinction between recklessness and negligence is normally one of kind, rather than degree: the reckless actor is aware of the risk and disregards it, whereas the negligent actor is unaware of the risk but should have been aware of it. *Id.* Furthermore, when determining criminal liability for reckless homicide, "a court must assess the defendant's knowledge of the *specific* risk created" by their conduct, rather than their knowledge of the general risk inherent in the overall activity. (Emphasis added.) *Id.* at ¶ 17. "Otherwise, there could be criminal liability for even negligent conduct whenever the defendant is aware he is engaged in an inherently dangerous activity." *Id.*

{¶26} In this case, Totty contends that criminal liability for reckless homicide must be grounded in specific conduct that creates a defined risk, not merely the general danger inherent in handling firearms. She asserts that findings of recklessness in accidental firearm discharges typically involve a defendant waving or pointing a weapon at a victim from point-blank range. Thus, she contends that, because the State's expert witness testified that the fatal shot in this case was fired from a distance, there is insufficient evidence that she discharged the weapon with the profound, heedless indifference required for recklessness, and that her actions constituted a mere substantial lapse in due care.

-11-

{¶27} Viewing the evidence presented in a light most favorable to the prosecution, we conclude that Totty's reckless homicide conviction is based on sufficient evidence. Decisively, "Ohio courts consistently hold that 'a defendant may be guilty of reckless homicide for an unintentional shooting if the evidence supports a finding that he handled a firearm in a reckless manner, resulting in another person's death.'" *State v. Coates*, 2025-Ohio-5340, ¶ 108 (8th Dist.), quoting *State v. Erby*, 2018-Ohio-3695, ¶ 20 (2d Dist.). Our review of the record in this case reveals that the State presented sufficient evidence that Totty handled a firearm in a reckless manner, which resulted in the victim's death. *Accord Erby* at ¶ 20.

{¶28} Specifically, the State presented expert testimony at trial that the victim was shot from a distance further away than would be possible for a self-inflicted gunshot wound, and that the path of the bullet was inconsistent with suicide. *See State v. Martin*, 2007-Ohio-7152, ¶ 37 (10th Dist.) (concluding that the State presented sufficient evidence of reckless homicide where a forensic pathologist testified that the location of the right-handed victim's wounds made self-infliction unlikely). Likewise, the evidence demonstrated that Totty and the victim were the only two people in the room when the shooting occurred. Therefore, a rational trier of fact could logically infer that Totty was the only individual who could have discharged the firearm.

{¶29} Moreover, the record contains sufficient evidence from which a rational trier of fact could conclude that Totty acted with a perverse disregard for a known risk. Although Totty consistently denied pulling the trigger, her statements to law enforcement described a scenario where she and the victim were engaged in a playful, verbal squabble involving the firearm. As the Supreme Court of Ohio has long recognized, "'a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death.'" *State v. Jones*, 2022-Ohio-3978, ¶ 88 (11th Dist.), quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). Therefore, even if Totty mistakenly believed the firearm was unloaded at the time, pointing and pulling the trigger of a weapon at another person constitutes a heedless indifference to the consequences. *See id.* at ¶ 89 (finding sufficient evidence of recklessness where the defendant caused the victim's death by pointing and "dry firing" a gun at another person standing several feet away).

{¶30} Furthermore, Totty's argument that the distance of the shot equates only to negligence ignores the specific risk created by her conduct. Importantly, the State presented evidence establishing that the revolver utilized in the shooting was a double-action firearm. As the State's expert explained regarding the mechanics of such weapons, discharging the firearm would require either overcoming a heavy double-action trigger pull, or deliberately cocking the hammer beforehand to enable a single-action shot. Under either scenario, a rational trier of fact could infer that manipulating the firing mechanism in such a manner while the weapon was aimed

at the victim was not a mere accident or a substantial lapse in due care, but rather a conscious disregard of a substantial and unjustifiable risk. *See Martin* at ¶ 37 (determining "that there was sufficient evidence to support the conviction, in part because there was evidence that the gun could not be fired any other way than through application of pressure on the trigger, and it was not more likely than other firearms to discharge unintentionally").

{¶31} This conclusion is further bolstered by evidence of Totty's prior familiarity with firearms and—as we determined in her second assignment of error—her properly admitted refusal to submit to a GSR test, which a jury could reasonably construe as a consciousness of guilt regarding her handling of the weapon. *See State v. Howse*, 2012-Ohio-6106, ¶ 30 (9th Dist.) (concluding that the reckless homicide conviction was based on sufficient evidence based on, in part, the defendant's awareness "of the risks posed by firearms")

{¶32} Accordingly, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Totty acted recklessly. Therefore, Totty's reckless homicide conviction is based on sufficient evidence.

{¶33} Totty's first assignment of error is overruled.

**Third Assignment of Error**

**The Trial Courts Denial of the Defendants Request for Relevant Physical Evidence to be Transported to the Appellants Expert Witness was Prejudicial, as the Denial Undermines the Appellants**

**Ability to Have Presented a Meaningful Defense, Resulting in an Unfair Trial.**

{¶34} In her third assignment of error, Totty argues that the trial court erred by denying her request to transport the physical firearm to her independent expert in Texas for examination and testing. Specifically, she contends that restricting her expert to only reviewing photographs of the weapon—while the State's expert was permitted to physically test and fire it—unfairly prejudiced her ability to challenge the State's findings and present a meaningful defense.

*Standard of Review*

{¶35} We review a trial court's decision regarding a discovery matter under Crim.R. 16 for an abuse of discretion. *See State v. Donnal*, 2007-Ohio-1632, ¶ 5 (3d Dist.). Again, an abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158.

*Analysis*

{¶36} In this case, the trial court granted Totty's request to hire an independent expert and authorized the release of photographic evidence, autopsy diagrams, and a sample of the victim's clothing to the examiner in Texas. However, the trial court denied the request to transport the physical firearm and ballistic evidence out of state, prioritizing the preservation of critical evidence and the integrity of the chain of custody (even though Totty "represented that she would waive any and all claims regarding the chain of custody"). (Doc. No. 196).

Importantly, by denying the transfer, the trial court did not preclude an independent examination of the physical evidence, but rather required that any such testing by Totty's expert to occur "where it is found—in the custody of law enforcement." (*Id.*).

{¶37} The trial court's decision aligns with the boundaries of criminal discovery. Crim.R. 16(B)(3) governs the disclosure of documents and tangible evidence by a prosecuting attorney. *See State v. Rivas*, 2009-Ohio-1354, ¶ 11 (analyzing a former version of the rule). Under the rule, upon a defendant's written demand, the State is required to "provide copies or photographs, or permit counsel for the defendant to copy or photograph" relevant "laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places." Crim.R. 16(B)(3). "The purpose of Crim.R. 16 'is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial.'" *State v. Maynard*, 2023-Ohio-4619, ¶ 23 (1st Dist.), quoting *State v. Palme*r, 2007-Ohio-374, ¶ 18.

{¶38} However, nothing in the plain text of Crim.R. 16 compels the State to surrender physical custody of a tangible object or transport it to an out-of-state facility. *See United States v. Countryside Farms, Inc.*, 428 F.Supp. 1150, 1155 (D. Utah 1977) (interpreting the "inspect and copy" language of the federal discovery rule and noting that it "doesn't provide for a conveyance or transfer of title to defendants of property belonging to the prosecution"). Indeed, "[t]he methods by

-16-

which a court may limit a defendant's access to only the information needed for his defense are delineated in Crim.R. 16(E)(1) and (2): the use of protective orders and restrictions on the time, place, and manner of the inspection and copying of evidence." *State v. Rivas*, 2009-Ohio-1354, ¶ 26. *See also State v. Long*, 2011-Ohio-4293, ¶ 17 (2d Dist.) ("The trial court may set restrictions on the time, place, and manner of inspecting and copying evidence."), citing Crim.R. 16(E)(2).

{¶39} Here, the trial court did not abuse its discretion by restricting the examination of the physical firearm and ballistic evidence to a local law enforcement facility. Critically, Totty was not wholly prevented from having her independent expert examine the firearm. Instead, the trial court placed a reasonable restriction on the location of the inspection to preserve irreplaceable physical evidence. The fact that Totty chose to hire an expert located in another state does not obligate the State to jeopardize the physical integrity of a murder weapon simply to alleviate her expert's travel costs. *See, e.g.*, *State v. Gillingham*, 2006-Ohio-5758, ¶ 38-39 (2d Dist.) (concluding that the trial court's restriction of a defense expert's access to evidence to the regional crime lab, despite the defendant's claim that the restriction made the examination "financially and logistically impossible" was reasonable). Consequently, because the trial court provided a reasonable avenue for access to the evidence, it did not abuse its discretion by denying Totty's request to transport the physical firearm and ballistic evidence to her independent expert in Texas for examination and testing

**{¶40}** Totty's third assignment of error is overruled.

**Fourth Assignment of Error**

**The Trial Court Erred in Allowing the States Pre-Emptory Challenges of Two Prospective Jurors, as the Challenges Were Not Made on a Race-Neutral Basis.**

**{¶41}** In her fourth assignment of error, Totty contends that the State used its peremptory challenges to strike two Black prospective jurors in violation of *Batson v. Kentucky*. 476 U.S. 76 (1986). In particular, Totty argues that the trial court erroneously accepted the State's stated race-neutral reasons for excusing the jurors, which she contends were merely pretexts for racial discrimination.

*Standard of Review*

**{¶42}** "The decision of a trial court regarding a prosecutor's motives for exercising a peremptory challenge is a factual determination which will not be overturned unless clearly erroneous." *State v. Powers*, 92 Ohio App.3d 400, 405-406 (10th Dist. 1993). *See also State v. Prieto*, 2016-Ohio-8480, ¶ 47 (7th Dist.) ("We do not reverse a trial court's decision on intentional discrimination unless the court was clearly erroneous in accepting the state's explanation as genuine (as opposed to pretextual)."). But, this court "must defer to the trial court's credibility decision." *Prieto* at ¶ 47. "'Under the clearly erroneous standard of review, a reviewing court can only reverse if it is "left with the definite and firm conviction that a mistake has been committed."'" *State v. Hawkins*, 2018-Ohio-4649, ¶ 9 (3d Dist.), quoting *State v. Williams*, 2014-Ohio-3138, ¶ 8 (8th Dist.), quoting *Anderson*

*v. Bessemer City*, 470 U.S. 564, 573 (1985). *See also Snyder v. Louisiana*, 552 U.S. 472, 477-479 (2008) (noting that appellate courts employ a "highly deferential standard of review" when evaluating a trial court's resolution of a *Batson* challenge).

{¶43} "If, however, a trial court does err in applying *Batson*, the error is structural." *State v. Thompson*, 2014-Ohio-4751, ¶ 53. "A structural error is a constitutional defect that defies analysis by harmless error standards, because it affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself." *State v. Fields*, 2005-Ohio-6270, ¶ 27 (12th Dist.).

> Structural error affects the substantial rights of a criminal defendant, even absent a specific showing that the outcome of the trial would have been different, and requires automatic reversal. Because a defendant is relieved of his burden to show prejudice, the finding of structural error is rare and limited to exceptional cases.

*State v. Martin*, 2004-Ohio-5471, ¶ 53 (Moyer, J., concurring in judgment only). The "'limited class of cases'" recognizing structural error are cases "in which the errors permeate the 'entire conduct of the trial from beginning to end,' so that the trial court cannot '"reliably serve its function as a vehicle for determination of guilt or innocence."'" *Fields* at ¶ 27, quoting *Arizona v. Fulminante*, 449 U.S. 279, 309-310 (1991), quoting *Rose v. Clark*, 478 U.S. 570, 577-578 (1986).

*Analysis*

{¶44} "'In *Batson v. Kentucky*, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors

solely on account of their race.""" *State v. Pope*, 2007-Ohio-5485, ¶ 7 (3d Dist.), quoting *State v. Douglas*, 2005-Ohio-6304, ¶ 28 (3d Dist.), quoting *Batson*, 476 U.S. at 89. "The Court stated that a defendant can demonstrate a violation of his equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution by showing that the State's use of peremptory challenges at the defendant's trial was used to intentionally exclude members of the defendant's race." *State v. Evans*, 2010-Ohio-4813, ¶ 6 (3d Dist.).

{¶45} """"A court adjudicates a *Batson* claim in three steps."""  *State v. Frazier*, 2007-Ohio-5048, ¶ 64, quoting *State v. Bryan*, 2004-Ohio-971, ¶ 106, quoting *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001). "'First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination.'" *Id.*, quoting *Bryan* at ¶ 106. "At the first step of the *Batson* inquiry, the defendant is not required to demonstrate that 'the challenge was more likely than not the product of purposeful discrimination.'" *Hawkins*, 2018-Ohio-4649, at ¶ 9 (3d Dist.), quoting *Johnson v. California*, 545 U.S. 162, 170-173 (2005). "'Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.'" *Id.*, quoting *Johnson* at 170.

{¶46} "'Second, if the trial court finds [a prima facie case of discrimination], the proponent of the challenge must provide a racially neutral explanation for the challenge.'" *Frazier* at ¶ 64, quoting *Bryan* at ¶ 106. "At the second step of the

inquiry, "'the issue is the facial validity of the prosecutor's explanation.'''" *Hawkins*

at ¶ 10, quoting *Thompson*, 2014-Ohio-4751, at ¶ 51, quoting *Hernandez v. New*

*York*, 500 U.S. 352, 360 (1991). "While 'it is not enough to simply deny a

discriminatory motive or assert good faith,' the '"explanation need not rise to the

level justifying exercise of a challenge for cause."''" *Id.*, quoting *Thompson* at ¶ 51,

quoting *Batson* at 97. "Accordingly, "'[u]nless a discriminatory intent is inherent

in the prosecutor's explanation, the reason offered will be deemed race neutral."''"

*Thompson* at ¶ 51, quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995), quoting

*Hernandez* at 360.

{¶47} "Finally, in step three, 'the trial court must decide, based on all the

circumstances, whether the opponent has proved purposeful racial discrimination.'"

*Hawkins* at ¶ 11, quoting *Frazier* at ¶ 64. "In step three, the trial court may not

simply accept a proffered race-neutral reason at face value, but must examine the

prosecutor's challenges in context to ensure that the reason is not merely

pretextual." *Frazier* at ¶ 65. When assessing "whether the State's race-neutral

reasons for using a peremptory challenge to strike a potential juror from the venire

are merely pretextual," a court should consider:

> "(1) the bare statistics; (2) the similarity of answers to voir dire
> questions by African-American jurors who were peremptorily
> challenged and answers by non-African-American prospective jurors
> who were allowed to serve; (3) broader patterns of practice, including
> jury shuffling; (4) disparate questioning of African-American and non
> African-American jurors; and (5) evidence that the prosecutor's office

has historically discriminated against African-Americans in jury selection."

*Hawkins* at ¶ 17, quoting *State v. Smith*, 2010-Ohio-1721, ¶ 87 (12th Dist.). "'[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.'" *Frazier* at ¶ 65, quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-252 (2005). "However, . . . trial court[s] [are] not compelled to make detailed factual findings to comply with *Batson*." *Id.* at ¶ 98. "If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded." *Id.* at ¶ 65.

{¶48} In this case, Totty challenged the State's use of two of its four peremptory challenges to strike two Black prospective jurors: G.L. (a Black female) and W.A. (a Black male). In response to Totty's *Batson* challenge, the State articulated distinct, race-neutral reasons for each dismissal: W.A. had prior media exposure regarding the first trial, and G.L. had a familial connection to Totty. Thereafter, the trial court denied Totty's *Batson* challenge after concluding that the State provided valid, non-discriminatory reasons for dismissing the jurors.

{¶49} On appeal, Totty does not argue either that the trial court erred by finding that she established a prima facie case of discrimination or that the State did not offer race-neutral justifications for exercising its peremptory

challenges. Instead, Totty's argument turns solely on whether the trial court properly conducted the third step of a *Batson* inquiry. Consequently, we will limit our analysis to only that issue. *Accord Hawkins*, 2018-Ohio-4649, at ¶ 16 (3d Dist.).

{¶50} Here, Totty argues that the State's race-neutral reasons for excusing the two Black jurors were merely pretextual. Specifically, she contends that the State's decision to excuse W.A. based on media exposure was pretextual because of the disparate treatment of a similarly situated white juror, who was also questioned extensively about media exposure but was not struck by the State. She further argues that the State's dismissal of G.L. based on a familial relationship was likewise pretextual. Thus, Totty suggests the State's true concern was the race of the jurors, rather than their media exposure or family ties.

{¶51} Based on our review of the record, we conclude that the trial court's rejection of Totty's *Batson* challenge was not clearly erroneous. Unquestionably, there is no evidence in the record that the State engaged in jury shuffling or that the Allen County prosecutor's office has historically discriminated against potential Black jurors in the jury-selection process. *Accord State v. Jones*, 2024-Ohio-2959, ¶ 78 (3d Dist.), citing *Hawkins* at ¶ 18. Likewise, there is no evidence in the record of disparate questioning of potential Black or non-Black jurors. *Compare id.*, quoting *Hawkins* at ¶ 18 ("Moreover, an examination of the transcript of the entire voir dire process does not reveal that the State systematically asked

black potential jurors different questions—either in tone or in substance—than it asked non-black potential jurors.").

{¶52} Furthermore, there is no evidence in the record suggesting that the "bare statistics" support Totty's *Batson* challenge. *See id.* at ¶ 79. Importantly, the record in this case reveals that the absence of African Americans on Totty's jury could have resulted from few African Americans randomly selected for the original jury pool. *See id.* Indeed, even though no Black jurors served on the jury in this case because the State excused the only two prospective Black jurors, the statistical disparity is clarified by the balance of the remaining evidence. *Accord id.*

{¶53} Turning to the balance of that evidence, neither the circumstances surrounding G.L.'s dismissal nor the alleged "similarities" between W.A. and the seated white juror demonstrate that the State's race-neutral reasons were pretextual. "'If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step.'" *Frazier*, 2007-Ohio-5048, at ¶ 71, quoting *Miller-El*, 545 U.S. at 241. "However, while courts can consider the extent to which the State's race-neutral reasons also apply to potential jurors against whom the State did not exercise peremptory challenges, such similarities are not necessarily conclusive proof that the State's proffered race-neutral justifications are pretextual." *Hawkins* at ¶ 25. "Instead, such similarities are just one fact to be considered by the trial court

in determining the plausibility of the State's race-neutral reasons 'in light of all evidence with a bearing on it.'" *Id.*, quoting *Miller-El* at 252.

{¶54} Assuming, without deciding, that Totty's objection with respect to G.L. was properly preserved, her pretext argument regarding this specific juror fails since the State struck G.L. based on a familial connection to Totty. *See State v. McConnell*, 2019-Ohio-2838, ¶ 30 (2d Dist.). Indeed, a prospective juror's personal or familial connection to the victim, the defendant, or their families is a highly relevant, race-neutral justification for a peremptory strike. *See State v. Murray*, 2004-Ohio-654, ¶ 10 (1st Dist.) (affirming that a juror's prior acquaintance with the defendant is a valid, race-neutral reason for a peremptory strike).

{¶55} Furthermore, we reject Totty's contention that excusing W.A. for media exposure was improper merely because a similarly situated white juror was retained because the differences between their overall profiles defeat any finding of pretext. Decisively, there was a meaningful, race-neutral difference: while both may have had media exposure, W.A. possessed the additional, independent disqualifying factor of being connected to the victim's family—a connection that, as we addressed with G.L., serves as an appropriate race-neutral justification for removal. *See McConnell* at ¶ 30. Indeed, beyond basic media exposure, W.A. stated during voir dire that he knew the victim's mother, though "[n]ot well [he] just work[ed] with her, and not in the same area," and that he is friends with her on Facebook. (Tr. at 94). He also recalled posts made by the victim's mother on

Facebook specifically "advocating towards the person responsible for having the death of her daughter . . . ." (*Id.* at 95). Because of this additional personal connection to the victim's family, W.A. was not similarly situated to the seated white juror. As a result, any similarities regarding media exposure between the struck juror and the white prospective juror who was seated do not reflect that the State's race-neutral reasons were pretextual.

{¶56} Therefore, we conclude that the State's reasons for exercising its peremptory challenges were race neutral. That is, "we are not left with a definite and firm conviction that the trial court mistakenly credited the State's race-neutral reasons for exercising a peremptory challenge against" the two jurors. *Hawkins* 2018-Ohio-4649, at ¶ 28 (3d Dist.). Accordingly, the trial court's decision rejecting Totty's *Batson* challenge was not clearly erroneous. *Accord Jones*, 2024-Ohio-2959, at ¶ 86 (3d Dist.).

{¶57} Totty's fourth assignment of error is overruled.

**Fifth Assignment of Error**

**The Trial Court Erred by Imposing Mandatory Prison Terms as R.C. 2929.13(F)(8) Does Not Transfer the Mandatory Term for the Underlying Offense.**

{¶58} In her fifth assignment of error, Totty argues that the mandatory sentence imposed for her reckless homicide conviction is contrary to law. Specifically, she contends that while the Supreme Court of Ohio's recent decision

-26-

in *State v. Logan*, 2025-Ohio-1772, requires the imposition of a prison term for her underlying felony, it does not require that term to be mandatory.

*Standard of Review*

{¶59} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶60} On appeal, Totty challenges this court's interpretation of R.C. 2929.13(F)(8), contending that the Supreme Court of Ohio's recent decision in *Logan* does not require the prison term for an underlying felony to be mandatory. This court recently rejected this argument. *State v. Seffernick*, 2025-Ohio-2292, ¶ 23-25 (3d Dist.). In doing so, we reaffirmed our prior precedent "that R.C. 2929.13(F)(8) obligates the trial court to impose a mandatory prison term for any felony (except carrying concealed weapons) where the offender had or controlled a firearm when committing that offense." *State v. Peters*, 2023-Ohio-4362, ¶ 85 (3d Dist.). That is, "[t]he mandatory sentence required by R.C. 2929.13(F)(8) is for the

underlying felony and not for any firearm specification that might be attached to the offense." *Id.* *Accord State v. Wolfe*, 2022-Ohio-96, ¶ 25 (3d Dist.). Accordingly, Totty's mandatory prison term is not contrary to law. *Accord Seffernick* at ¶ 25.

{¶61} Totty's fifth assignment of error is overruled.

{¶62} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, and LEWIS, J.J., concur.**

Case No. 1-24-79

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

Ronald L. Lewis, Judge

DATED:
/hls


**\*\* Judge Ronald C. Lewis of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**

-29-